UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC, <br><br>     Plaintiff, <br><br>     v. <br><br> US FREEDOM FLYERS, INC., a Texas nonprofit corporation; US FREEDOM FLYERS, a North Carolina unincorporated association; JOSHUA YODER, individually and in his capacity as President and Board Member of US Freedom Flyers, Inc.; JONI DUNN, individually and in her capacity as Executive Director and Board Member of US Freedom Flyers, Inc.; JESSICA SARKISIAN, individually and in her capacity as a representative of the unincorporated association US Freedom Flyers; VERONICA HARRIS; and RON SOUTHER, <br><br>     Defendants. | Case No. 4:23-cv-00380-AKB <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Plaintiff's Motion to Dismiss Defendants' Counterclaims for Failure to State a Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 18), Defendants' Motion for Transfer of Venue under 28 U.S.C. § 1404(a) (Dkt. 24), and Counterclaimants' Motion to Strike Exhibits and Portions of the Reply to Response to Plaintiff's Motion to Dismiss Counterclaims (Dkt. 32). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or

**MEMORANDUM DECISION AND ORDER - 1**

order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed, the Court denies Defendants' motion to transfer, grants Counterclaimants' motion to strike, and grants in part and denies in part Plaintiff's motion to dismiss.

## I.   BACKGROUND

Plaintiff Health Freedom Defense Fund, Inc. (HFDF) is a Wyoming nonprofit corporation with its principal place of business in Idaho. (Dkt. 1 at Ex. A at ¶ 3). According to HFDF's allegations, its "charitable purpose is to promote public health by educating the public about matters of health and laws pertaining to health," and to achieve this purpose, HFDF supports "legal challenges to unjust laws that undermine the health of individuals and families and infringe their health rights." (*Id.*). Defendant US Freedom Flyers (USFF) is a North Carolina unincorporated association "consisting largely of individuals in the air travel and transportation industries who oppose COVID mandates." (*Id.* at ¶ 15).

In 2021, HFDF entered into an Administration Agreement with USFF whereby HFDF would receive monetary donations and provide public relations services for USFF's litigation challenging federal COVID-19 mandates. (Dkt. 1 at Ex. A at Ex. 4). In November 2021, USFF and HFDF, among others, filed a lawsuit challenging a federal COVID-19 vaccine mandate. (*Id.* at ¶ 25) (citing *USFF v. United States*, No. 8:21-cv-2738, 2021 WL 5514034 (M.D. Fla. Nov. 22, 2021). Once the COVID-19 national emergency ended in 2023, the lawsuit was dismissed. (*Id.* at ¶ 30). HFDF, however, still holds over $500,000 in funds raised to fund USFF's vaccine mandate litigation (hereafter "funds"). (*Id.* at ¶ 31). HFDF would like to redirect the funds to other health freedom-oriented litigation it supports. (*Id.* at ¶¶ 32-33). Defendants, meanwhile, claim ownership of the funds and assert HFDF has no right to the funds. (Dkt. 12 at pp. 31-32).

MEMORANDUM DECISION AND ORDER - 2

HFDF brought a declaratory judgment action in Idaho state court under Idaho Code § 10-1201 "regarding the proper disposition and expenditure of charitable funds." (Dkt. 1-1 at ¶ 1). Specifically, HFDF seeks "to modify the restrictions on the funds" received for the USFF's vaccine mandate litigation under Idaho Code § 33-5006 and the common law principles of *cy pres*. (*Id.* at ¶ 35). HFDF has named as Defendants in this action: (1) USFF, a North Carolina unincorporated association; (2) US Freedom Flyers, Inc. (USFF-Texas), a Texas nonprofit corporation, which is allegedly a successor organization to USFF; and (3) several individuals related to either USFF or USFF-Texas, including (a) Joshua Yoder, (b) Joni Dunn, and (c) Ron Souther, all of whom are North Carolina residents; (d) Veronica Harris, a resident of Alabama, and (e) Jessica Sarkisian, a resident of Pennsylvania. (*Id.* at ¶¶ 13-20).

Defendants removed the action to federal district court. (Dkt. 1). After answering the complaint, Defendants filed an amended answer, and USFF, USFF-Texas, and Yoder (Counterclaimants) alleged counterclaims against HFDF. (Dkt. 12). Counterclaimants seek a declaratory judgment that USFF-Texas is USFF's successor; USFF-Texas is "the rightful party" to hold the funds; and HFDF has no right to the funds. (*Id.* at ¶¶ 89-90). Further, they allege HFDF breached the Administration Agreement and its fiduciary duties. (*Id.* at 77-80). Taken together, the counterclaims and claims place at issue whether HFDF may rightfully retain the funds and, if so, whether HFDF may modify the funds' purpose or restrictions.[1] In response to the counterclaims, HFDF filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. (Dkt. 18). Thereafter,

---

[1]     In response to HFDF's motion to dismiss, Defendants argue neither the doctrine of *cy pres* nor I.C. § 33-5006 apply in this case. (Dkt. 28 at pp. 8-10). Defendants, however, did not move to dismiss HFDF's request for declaratory relief under these laws but, rather, answered the complaint. (Dkt. 12). For that reason, their argument about the applicable law to address HFDF's request for a declaratory judgment is misplaced.

MEMORANDUM DECISION AND ORDER - 3

Defendants filed a motion to transfer venue of this case to the Western District of North Carolina. (Dkt. 24).

## II.   ANALYSIS

### A.      Motion for Transfer of Venue

Defendants move to transfer venue to the Western District of North Carolina under 28 U.S.C. § 1404(a). (Dkt. 24). Section 1404(a) provides, in relevant part, that a district court may transfer any civil action to any other district, where the action might have been brought, for the convenience of the parties and in the interest of justice. The moving party bears the burden of proof justifying a transfer of venue. *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned."); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (noting defendant bears burden of strong showing of inconvenience to support transfer).

The threshold question under § 1404(a) is whether the plaintiff could have brought the action in the venue to which the defendant seeks to transfer the action. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). The district court only has discretion to transfer the case "to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "The phrase 'where it might have been brought' refers solely to districts where [the plaintiff] could have originally filed the suit." *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018). Section 1391 governs venue. 28 U.S.C. § 1391(a)(1) ("[T]his section shall govern the venue of all civil actions brought in the district courts of the United States.").

MEMORANDUM DECISION AND ORDER - 4

Section 1391(b) provides a plaintiff may bring an action either in: (1) "a judicial district in which a defendant resides, if all the defendants are residents of the State in which the district is located," or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1), (2). Only if an action may not be brought under either (b)(1) or (b)(2) may a plaintiff bring an action under (b)(3) in "any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3).

If, under § 1391(b), a plaintiff could have brought the action in the venue to which the defendant requests a transfer, then the court considers whether a transfer is appropriate based on "an individualized case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotations omitted). Determining whether to transfer venue requires the court weigh multiple "private" factors, including, for example:

> (1) The location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. Additionally, the court considers "public" factors "including court congestion, the local interest in having localized interests decided at home, and the familiarity of the forum with the law that will govern the case." *City of Warren Gen. Employees' Retirement Sys. v. Teleperformance SE*, No. 1:23-CV-00181-BLW, 2023 WL 8372378, at *2 (D. Idaho Dec. 4, 2023).

Here, Defendants request a transfer to the Western District of North Carolina. HFDF argues this action could not have been brought in that district. HFDF is correct. HFDF could not have

MEMORANDUM DECISION AND ORDER - 5

brought this action in that district because all Defendants do not reside in North Carolina; the subject property is not located there; and according to HFDF's allegations, a substantial part of the events giving rise to HFDF's request for declaratory judgment did not occur there and the funds are not "situated" there. *See* 28 U.S.C. § 1391(b)(1), (2). Defendants do not argue otherwise. Meanwhile, Defendants concede Idaho is a proper venue.

Instead of addressing how venue is purportedly proper in the Western District of North Carolina, Defendants argue § 1391 does not apply to determine whether a transfer of venue is proper under § 1404(a). In support, Defendants rely on *Lynch v. Vanderhoef Builders*, 228 F. Supp. 2d 644 (D. Md. 2002). *Lynch*, however, is inapposite. In that case, the defendant removed the plaintiff's state court action to federal court under 28 U.S.C. § 1441. *Lynch*, 228 F. Supp. 2d at 645. Section 1441 provides a removed case's venue is proper in the federal district in which the plaintiff originally brought the state court action. 28 U.S.C. § 1441(a) (providing venue for removed case is in district "embracing the place where such action is pending"). In other words, *Lynch* stands for the proposition that the District of Idaho is a proper venue in this case because Plaintiff filed it in state court in Bonneville County, Idaho, and Defendants filed their removal papers in this district. *Lynch* does not stand for the proposition, as Defendants assert, that § 1391 does not govern in a motion for change of venue to a different district *after* removal occurs.

Because Defendants fail to show how HFDF could have brought this action in the Western District of North Carolina, Defendants have failed to meet their burden for a transfer to that venue. *See Decker Coal*, 805 F.2d at 843 (9th Cir. 1986) (noting defendant bears burden of strong showing of inconvenience for transfer); *Hatch*, 758 F.2d at 414 (noting threshold question of whether plaintiff could have originally brought action in requested transferee venue). For this reason, the Court does not need to address whether the requested transfer is appropriate under the private and

MEMORANDUM DECISION AND ORDER - 6

public factors which the Ninth Circuit case law has identified for purposes of determining if a transfer of venue is appropriate.

Regardless, Defendants do not address those factors. Rather, Defendants rely on nonbinding authority to argue "areas of interest of justice" require a transfer of venue. (Dkt. 24-1 at pp. 5-7, 9-15). According to Defendants, these areas include that HFDF's attorneys have "'poisoned the well' of the Idaho Attorney General's office" based on pre-litigation communications between the Attorney General's office and HFDF and that HFDF's "members/directors" and local counsel have "extensive and highly placed political connections in Idaho." (*Id.* at pp. 9-15). Regarding these individuals, Defendants assert, for example, that "in a small population like Idaho, these [political] connections [of HFDF's board members and counsel] can take on disproportionate influence and provide an unfair advantage to a local, politically connected nonprofit involved in a lawsuit against an out-of-state nonprofit." (*Id.* at p. 14). No authority, however, supports the proposition that the Court should consider political factors in addressing a motion for change of venue. Indeed, consideration of political reasons for purposes of transferring venue or otherwise would be antithetical to an independent and impartial judiciary.

Moreover, Defendants' extensive focus on these political issues is misdirected. To the extent Defendants' arguments suggest this Court will be swayed by or biased because of politics, Defendants are wrong. The Court will resolve both HFDF's request for declaratory relief and Counterclaimants' counterclaims based on the applicable legal authorities and the facts as found under the appropriate standard—without regard to any political considerations including HFDF's political affiliations or activities or those of the individuals with whom it has or is associated.

Further, Defendants' accusations that the Attorney General is unfairly biased in favor of HFDF and has a "conflict of interest" are unsupported. The basis of Defendants' concerns about

MEMORANDUM DECISION AND ORDER - 7

the Attorney General's "fairness" appears to be that § 33-5006(3) requires that "the attorney general must be given an opportunity to be heard" regarding HFDF's request to repurpose the funds or to modify their restrictions. Section 33-5006(3) also requires, however, that "the institution [seeking to modify the purpose of the charitable funds] shall notify the attorney general of the application [to modify that purpose]." To the extent HFDF communicated with the Attorney General as § 33-5006 requires, those communications were not improper. Moreover, the Attorney General has declined, at least at this stage, to become involved in the case. (Dkt. 23-3) (expressing no opinion on who may retain funds). For that reason, its position on the matter presently has no bearing on this case.

Finally, Defendants' assertion that a transfer of venue will "resolve the issue of personal jurisdiction" is misplaced. (Dkt. 24-1 at p. 16). Defendants have waived any personal jurisdiction challenges, including by not filing a motion to dismiss for lack of personal jurisdiction, answering HFDF's complaint, failing to allege an affirmative defense of lack of personal jurisdiction, asserting counterclaims against HFDF, and otherwise participating in the litigation. *See* Fed. R. Civ. P. 12(h)(1); *Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F. App'x 467, 471-72 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635 (9th Cir. 2018); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended*, 807 F.2d 1514 (9th Cir. 1987).

Defendants fail to establish HFDF could have brought its action in the Western District of North Carolina. For that reason, Defendants' motion to transfer venue fails. Further, even assuming HFDF could have brought its action in that district, Defendants failed to show any legitimate factors warranting a transfer to that district. Accordingly, the Court denies Defendants' motion to transfer.

**MEMORANDUM DECISION AND ORDER - 8**

**B.**      **Motion to Strike**

Before addressing HFDF's Rule 12(b)(6) motion, the Court addresses Counterclaimants'

motion to strike portions of HFDF's reply brief in support of its Rule 12(b)(6) motion. (Dkt. 32).

Specifically, Counterclaimants move to strike three exhibits attached to that brief including

Exhibit 1, which purports to be a fully executed copy of the Administration Agreement, and

Exhibits 2 and 3, which appear to be screen shots of a website. HFDF relies on these latter two

exhibits to posit that donors knew they were donating to HFDF and not to USFF. (Dkt. 31-1 at

pp. 6-11). Further, Counterclaimants move to strike "new arguments [on reply] that have to do

with the 'donor interface.'" (Dkt. 32).

A district court need not consider arguments raised for the first time in a reply brief. *Zamani*

*v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). A moving party's introduction of new facts or new

arguments on reply is generally improper. *See, e.g.*, *Gibson v. Credit Suisse AG*, No. 1:10-CV-

00001-JLQ, 2015 WL 13648588, at *4 (D. Idaho Apr. 13, 2015). A reply brief, however, may

properly reiterate and elaborate on grounds for dismissal presented in the opening brief and may

respond to and rebut arguments raised in the opposition brief. *See, e.g.*, *Alaska Oil & Gas Ass'n v.*

*Salazar*, No. 3:11-CV-0025-RRB, 2012 WL 12871656, at *1 (D. Alaska July 10, 2012).

Additionally, a district court generally may not consider any materials beyond the

complaint when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688

(9th Cir. 2001); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th

Cir. 1990). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6)

motion into a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure.

"A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A limitation on this exception, however, is that a court may not consider a document if a party contests its authenticity. *Lee*, 250 F.3d at 688 (noting court may consider documents if authenticity is not questioned); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (same).

Here, Counterclaimants argue the Court may not consider HFDF's Exhibit 1, which is a fully executed copy the Administration Agreement. HFDF, likewise, attaches a copy of the Administration Agreement to its complaint; that copy, however, is only executed by a USFF representative and not by HFDF. (Dkt. 1-1 at pp. 33-35). Ordinarily, that a document is attached to the complaint would allow the Court to consider it without converting the Rule 12(b)(6) motion into a Rule 56 motion. Counterclaimants, however, directly dispute the authenticity of Exhibit 1. (Dkt. 32-1 at p. 2). For this reason, the Court cannot consider the document in addressing HFDF's Rule 12(b)(6) motion. *See Lee*, 250 F.3d at 688 (noting court may consider documents only if authenticity is not questioned).

HFDF relies on *Promise Pub. Schs., Inc. v. San Jose Unified Sch. District*, No. 20-cv-08555-CRB, 2021 WL 916903, at *5 n.5 (N.D. Cal. Mar. 20, 2021), to assert that Counterclaimants' authenticity challenge is ineffective. *Promise Public*, however, is distinguishable. In that case, the parties did not dispute the authenticity of the documents at issue. *Id.* ("[T]he parties do not dispute the authenticity of the documents.") (brackets and quotations omitted). In contrast, Counterclaimants do dispute Exhibit 1's authenticity in this case and that

challenge does not appear to be limited to a foundation challenge. *Id.* (noting challenge to lack of authentication process under evidentiary rules is different than challenge to authenticity).

Accordingly, the Court declines to consider Exhibit 1. The Court also declines to consider Exhibits 2 and 3, which are not documents attached to nor incorporated into the complaint or matters of judicial notice. As a result, neither Exhibit 2 nor Exhibit 3 is a document the Court can consider without converting HFDF's Rule 12(b)(6) motion to a Rule 56 motion, which it declines to do.

Finally, the Court declines to consider HFDF's reply-argument regarding the donors' intent. HFDF argues its reply properly rebuts Counterclaimants' arguments regarding the website, the donor interface, and the donors' intent. (Dkt. 34 at p. 3). Regardless of whether HFDF's reply rebuts Counterclaimants' arguments, the parties' arguments about the donors' intent are factual in nature and raise factual disputes. In addressing HFDF's motion to dismiss, however, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party" *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). For this reason, neither Counterclaimants' factual arguments about the donors' intent nor HFDF's rebuttal of those arguments are proper for consideration. Accordingly, the Court grants HFDF's motion to strike.

## C.    Motion to Dismiss Counterclaims

Plaintiff moves to dismiss the counterclaims under Rule 12(b)(6) for failure to state a claim. (Dkt. 18). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.

### 1.      Breach of Fiduciary Duty

HFDF moves to dismiss the counterclaim for its alleged breach of fiduciary duty. (Dkt. 18-1 at pp. 11-13). Establishing a claim for breach of fiduciary duty necessarily requires showing a fiduciary relationship exists. *City of Meridian v. Petra Inc.*, 299 P.3d 232, 248 (Idaho 2013). Generally, a fiduciary relationship exists "between two parties when one is under a duty to act or to give advice for the benefit of the other upon a matter within the scope of the relation." *Podolan v. Idaho Legal Aid Servs., Inc.*, 854 P.2d 280, 289 (Idaho Ct. App. 1993); *accord Petra Inc.*, 299 P.3d at 248. A fiduciary relationship is "commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other." *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 296 (Idaho 2006); *see also Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 853 (Idaho 1991) (noting "facts and circumstances" must indicate "foundation" for belief party is acting as fiduciary).

Here, Counterclaimants allege that HFDF "owed USFF the duty of care, confidentiality, loyalty, obedience, and accounting" and that HFDF breached these duties by, among other things, misrepresenting how the funds could be used, misappropriating the funds, inserting itself into USFF's lawsuit, and refusing to share donor information. (Dkt. 12 at ¶¶ 77-81). In support of its motion to dismiss, HFDF disputes it owes USFF a fiduciary relationship, asserts a fiduciary relationship does not arise in an arm's length contractual relationship, and notes the Administration Agreement expressly states it is "an arm's length contractual relationship." (Dkt. 18-1 at p. 12).

**MEMORANDUM DECISION AND ORDER - 12**

Although HFDF is correct that no fiduciary duty arises between parties "dealing with one another at 'arm's length,'" *High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010), that argument begs the question of whether HFDF's relationship with USFF, including under the Administrative Agreement, was in fact an arm's length agreement. Counterclaimants' allegations adequately aver the existence and breach of a fiduciary duty. Whether HFDF indeed owed USFF a fiduciary duty must be determined not just on the Administrative Agreement's language but on the "facts and circumstances." *See Idaho First Nat'l Bank*, 824 P.2d at 853 (rejecting fiduciary duty claim after "review of the entire evidentiary record" following trial). As alleged, the facts and circumstances support the plausible conclusion the parties' relationship was more than an arm's length transaction. Accordingly, the Court denies HFDF's  motion to dismiss the counterclaim for breach of fiduciary duty.

### 2.        Breach of Contract

HFDF moves to dismiss the counterclaim for breach of contract. Rather than challenging the breach of contract allegations, however, HFDF raises several collateral attacks to the counterclaim. First, HFDF relies on nonbinding authority to argue USFF lacks the requisite "juridical personhood" or "personality." (Dkt. 18-1 at pp. 13-17). *See, e.g.*, *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 472 (La. 1990) (noting Louisiana statutory provision defines "juridical person" as "an entity to which the law attributes personality, such as a corporation or a partnership" distinct from its members). Based on this purported lack of "juridical personhood," HFDF argues USFF "cannot legally assert any claims," including a breach of contract counterclaim. (Dkt. 18-1 at p. 17; Dkt. 31 at p. 10) (clarifying HFDF's "juridical personality" argument relates to its challenge to breach of contract counterclaim).

**MEMORANDUM DECISION AND ORDER - 13**

In federal court, however, Rule 17 of the Federal Rules of Civil Procedure governs a party's capacity to sue or to be sued. Fed. R. Civ. P. 17(b)(1)-(3); *see Cooper v. Wal-Mart Stores, Inc.,* 959 F. Supp. 964, 966 n.2 (C.D. Ill.1997) (case law supports the notion that capacity issues under Rule 17(b) may be raised by motion to dismiss). Rule 17(b) provides a party's capacity to sue and be sued is determined "by the law of the individual's domicile"; a corporation's capacity is determined "by the law under which it was organized"; and with some exceptions, all other parties' capacity is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(1)-(3). In this case, the parties agree USFF is an unincorporated association. (Dkt. 1 at Ex. A at ¶ 15; Dkt. 12 at ¶ 8). Accordingly, Rule 17(b)(3), governing the capacity of "all other parties" to be sued and to sue, applies to determine USSF's capacity and requires consideration of Idaho's law regarding an unincorporated association.

Idaho law recognizes unincorporated, nonprofit associations and permits such associations to sue or be sued. I.C. §§ 30-27-102(a)(5), 30-27-109. An Idaho unincorporated nonprofit association is defined as "an unincorporated organization consisting of two (2) or more members joined under an agreement that is oral, in a record, or implied from conduct for one (1) or more common, nonprofit purposes." I.C. § 30-27-102(a)(5). Counterclaimants allege that "USFF was formed for the purpose of defending medical freedom in the aviation industry and particularly to challenge federal and private airline industry COVID-19 vaccine mandates"; Yoder, Souther, Sarkisian, and Harris "combined efforts to protect medical freedom in the aviation industry"; and "USFF had thousands of supporters around the globe." (Dkt. 12 at pp. 15-16). Likewise, HFDF's allegations acknowledge USFF "is an unincorporated association with no corporate identity consisting largely of individuals in the air travel and transportation industries who oppose COVID

mandates." (Dkt. 1 at Ex. A at ¶ 15). Based on these allegations, the Court concludes USFF has capacity to sue. *See* Fed. R. Civ. P. 17(b)(3); I.C. §§ 30-27-102(a)(5), 30-27-109.

Relatedly, HFDF argues that USFF-Texas "has no legal right to assert its counterclaims" because it was not validly formed under Texas law. (Dkt. 18-1 at pp. 17-18). Rule 17(b) resolves this argument too. Under Rule 17(b)(2), the capacity of a corporation to sue is determined by the law under which it was organized. Here, USFF-Texas is a Texas nonprofit corporation. Under Texas law, a charitable association may incorporate as nonprofit "with the consent of a majority of its members." Tex. Bus. Orgs. Code Ann. § 22.101. Based on Counterclaimants' allegations, the Court finds USFF-Texas has plausibly alleged it is validly formed under Texas law, and thus USFF-Texas has capacity to sue under Rule 17(b) sufficient to survive Plaintiff's motion to dismiss. (*See* Dkt. 12 at p. 14, Ex. A). Moreover, HFDF has already implicitly admitted that both USFF and USFF-Texas have the capacity to be sued by naming them as a defendant in this case. Rule 17(b), however, governs both a party's "[c]apacity to sue or to be sued," and it does not provide a party can be sued but cannot sue in return, as HFDF's argument suggests. Fed. R. Civ. P. 17(b)(3).

HFDF also argues that, because USFF purportedly lacks "juridical personality," "USFF is not legally capable of assigning any contract rights" to USFF-Texas, and because USFF cannot assign its rights, USFF Texas cannot assert a breach of contract counterclaim. (Dkt. 18-1 at pp. 17-19). The Court's conclusion that USFF has the capacity to be sued and to sue under Rule 17(b), however, resolves these issues for purposes of HFDF's Rule 12(b)(6) motion. Factual issues regarding USFF's and USFF-Texas' rights and powers as entities, the interpretation of the Administration Agreement, USFF's rights under that Agreement, and the validity of an assignment of those rights to USFF-Texas cannot be resolved  on a Rule 12(b)(6) motion.

MEMORANDUM DECISION AND ORDER - 15

Finally, HFDF challenges the breach of contract counterclaim because the Administration Agreement "expressly provides that any disputes thereunder are legally required to be addressed solely through arbitration." (Dkt. 18-1 at p. 13). The Federal Arbitration Act (FAA) controls the enforcement of arbitration clauses. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Section 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims. 9 U.S.C. § 3. Importantly, however, § 4 provides that "a party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition" for an order directing the parties to arbitrate. 9 U.S.C. § 4.

HFDF, however, has not moved to compel arbitration under the Administration Agreement; rather, it seeks to dismiss the counterclaim alleging a breach of that Agreement. That the breach of counterclaim may be subject to arbitration, however, does not also mean it is subject to dismissal under Rule 12(b)(6). *See Krasemann v. Scholastic Inc.*, No. CV-18-08313-PCT-DWL, 2019 WL 3220535, at *2-3 (D. Ariz. July 17, 2019); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Plaintiff has failed to establish otherwise, and the Court declines to construe HFDF's motion to dismiss as a motion to compel arbitration. Accordingly, Plaintiff's motion to dismiss the breach of contract claim is denied.

### 3.     Requests for Declaratory Judgment and Injunctive Relief

Counterclaimants allege "counts" for both declaratory judgment and injunctive relief. (Dkt. 12 at pp. 31-32). Specifically, they seek a declaratory judgment that USFF-Texas is the successor of USFF and the rightful party to the funds and that HFDF has no right to continue to hold the funds. (Dkt. 12 at ¶ 89). Further, Counterclaimants seek an order enjoining HFDF from

**MEMORANDUM DECISION AND ORDER - 16**

using USFF's donor list and from using or misusing the funds. (*Id.* at ¶¶ 102-03). HFDF moves to dismiss these "counts." In support, it recites terms of the Administration Agreement, argues the Agreement provides the funds belong to it, and asserts any conclusion to the contrary violates public policy and applicable tax laws. (Dkt. 18-1 at pp. 8-11). Again, HFDF's argument raises factual issues beyond the scope of its Rule 12(b)(6) motion.

Moreover, declaratory relief is a remedy not an independent cause of action. Section 2201 of Title 28 of the United States Code provides that "in a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "To avail itself of the Declaratory Judgment Act, a claimant must show a justiciable controversy exists, and the controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests." *N. Cnty. Commc'ns Corp. v. Verizon Glob. Networks, Inc.*, 685 F. Supp. 2d 1112, 1123 (S.D. Cal. 2010). Because Counterclaimants have sufficiently alleged counterclaims, the Court concludes a justiciable controversy affecting the parties' legal rights exists, and HFDF's motion to dismiss is denied as to Counterclaimants' request for declaratory relief.

Similarly, injunctive relief is a remedy, not an independent cause of action. *See, e.g.*, *Timothy v. Oneida Cnty.*, No. 4:14-CV-00362-BLW, 2015 WL 2036825, at *3 (D. Idaho Apr. 30, 2015); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010); *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002). Because Counterclaimants have sufficiently alleged counterclaims against HFDF, the Court concludes Counterclaimants may be entitled to injunctive relief, and HFDF's motion to dismiss is denied as to Counterclaimants' request for injunctive relief.

MEMORANDUM DECISION AND ORDER - 17

#### 4.    Yoder's Lack of Standing

HFDF argues Yoder should be dismissed as a counterclaimant because he lacks standing to assert any counterclaims. (Dkt. 18-1 at p. 19). Generally, a claimant's standing must be challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which HFDF does not raise in its motion to dismiss. The Court, nevertheless, has an independent obligation to determine whether subject matter jurisdiction exists. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federal subject matter jurisdiction requires a plaintiff to have standing. *Chandler v. State Farm Mut. Auto. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing [pertains] to federal courts' subject matter jurisdiction, [it] is properly raised in a Rule 12(b)(1) motion to dismiss.").

Article III of the United States Constitution limits the scope of federal judicial power to the adjudication of cases and controversies. U.S. Const. art. III, § 2. A fundamental safeguard of that limitation is the doctrine of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765 (9th Cir. 2018). "The Article III standing inquiry serves a single purpose: to maintain the limited role of courts by ensuring they protect against only concrete, non-speculative injuries." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (citing *Lujan*, 504 U.S. at 583). "Whether a plaintiff has standing (and thus, whether the court has jurisdiction) is a threshold question that is distinct from the merits of [the] claim." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 878-79 (9th Cir. 2022) (internal quotation marks omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. To do so, the party in question must prove: (1) an injury-in-fact, which is concrete, particularized, and actual or imminent; (2) a fairly

traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood the relief sought will redress the injury. *Id.* at 560-61.

Here, HFDF argues Yoder lacks standing because he is not a party to the Administration Agreement; he does not allege HFDF owes him any fiduciary duty; and he does not allege he is entitled to the funds. (Dkt. 18-1 at pp. 19-20). Despite having the burden to establish his standing to assert the counterclaims, Yoder does not respond to HFDF's argument. Regardless, a review of the counterclaims shows Counterclaimants allege injury to USFF and to USFF-Texas but not to Yoder. (*See* Dkt. 12 at pp. 29-34). Accordingly, Yoder has failed to establish standing to assert the counterclaims, and the Court grants HFDF's motion to dismiss him as a counterclaimant. Counterclaimants, however, may attempt to amend their allegations to establish Yoder's standing, if possible. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1072 (9th Cir. 2011) (noting dismissal without leave to amend is improper unless clear claims could not be saved by any amendment).

In summary, the Court finds that, under the Rule 12(b)(6) standard, Counterclaimants have sufficiently alleged counterclaims for breach of contract and breach of fiduciary. Both USFF and USFF-Texas have capacity under Rule 17(b) to sue and be sued, a fact which HFDF essentially concedes by bringing this action against them. Further, Counterclaimants may seek declaratory and injunctive relief. Yoder, however, lacks standing, although Counterclaimants may amend their counterclaims to allege his standing, if possible.

## III.  ORDER

**IT IS ORDERED:**

1.      Defendants' and Counterclaimants' Expedited Motion for Transfer of Venue (Dkt. 24) is **DENIED**.

MEMORANDUM DECISION AND ORDER - 19

2.      Plaintiff's Motion to Dismiss Defendants' Counterclaims for Failure to State a Claim under Rule 12(b)(6) (Dkt. 18) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Counterclaimants are **GRANTED** leave to amend their counterclaims to present allegations sufficient to establish Yoder's standing. Any amendment to the counterclaims must be filed within fourteen (14) days of the issuance of this order.

4.      Defendants'/Counterclaimants' Motion to Strike Exhibits and Portions of the Reply to Response to Plaintiff's Motion to Dismiss Counterclaims (Dkt. 32) is **GRANTED**.

DATED: July 02, 2024

Amanda K. Brailsford
Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER – 20**