UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC., | Case No. 4:23-cv-00380-AKB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| US FREEDOM FLYERS, INC., a Texas nonprofit corporation; US FREEDOM FLYERS, a North Carolina unincorporated association; JOSHUA YODER, individually and in his capacity as President and Board Member of US Freedom Flyers, Inc.; JONI DUNN, individually and in her capacity as Executive Director and Board Member of US Freedom Flyers, Inc.; JESSICA SARKISIAN, individually and in her capacity as a representative of the unincorporated association US Freedom Flyers; VERONICA HARRIS; and RON SOUTHER, | |
| Defendants. | |

Pending before the Court are Defendants' Motion to File a Second Amended Answer and Amended Counterclaim (Dkt. 48) and Plaintiff's Motion for Protective Order (Dkt. 58). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining

**MEMORANDUM DECISION AND ORDER - 1**

motions on briefs, without oral hearings."). For the reasons discussed below, the Court denies Defendants' motion to assert new counterclaims and grants Plaintiff's motion for a protective order.

## I.    BACKGROUND

Plaintiff Health Freedom Defense Fund, Inc. ("HFDF") is a Wyoming nonprofit corporation with its principal place of business in Idaho (Dkt. 1 at Ex. A at ¶ 3), and Defendant US Freedom Flyers ("USFF") is a North Carolina unincorporated association "consisting largely of individuals in the air travel and transportation industries who oppose COVID mandates" (*id.* at ¶ 15). In 2021, HFDF entered into an Administration Agreement with USFF whereby HFDF would receive monetary donations and provide public relations services for USFF's litigation challenging federal COVID-19 mandates (Dkt. 1 at Ex. A at Ex. 4). In 2021, USFF and HFDF filed a lawsuit challenging a federal COVID-19 vaccine mandate, but by 2023, the lawsuit was dismissed when the COVID-19 national emergency ended (*id.* at ¶¶ 25, 30) (citing *USFF v. United States*, No. 8:21-cv-2738, 2021 WL 5514034 (M.D. Fla. Nov. 22, 2021)). HFDF still holds over $500,000 in funds raised to support USFF's vaccine mandate litigation, and HFDF wishes to direct these funds to other freedom-oriented litigation (Dkt. 1 at ¶¶ 32-33). USFF, meanwhile, claims ownership of the funds (Dkt. 12 at 31-32).

HFDF brought a declaratory judgment action in Idaho state court under Idaho Code § 10-1201 "regarding the proper disposition and expenditure of charitable funds" (Dkt. 1-1 at ¶ 1). HFDF seeks "to modify the restrictions on the funds" received for the USFF's vaccine mandate litigation under Idaho Code § 33-5006 and the common law principles of *cy pres* (Dkt. 1-1 at ¶ 35). HFDF named as defendants USFF's North Carolina unincorporated association, its Texas

nonprofit corporation, and several individuals related to USFF, including Joshua Yoder, USFF's President and board member (collectively referred to as "USFF") (*id.* at ¶¶ 13-20). USFF removed the action to federal court (Dkt. 1). After answering the complaint, USFF timely amended its answer ("First Amended Answer") as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure (Dkts. 1, 12). USFF's First Amended Answer sought a declaratory judgment that USFF-Texas is USFF's successor; USFF-Texas is "the rightful party" to hold the funds; and HFDF has no right to the disputed funds (Dkt. 12 at ¶¶ 89-90). USFF further alleges HFDF breached the Administration Agreement and its fiduciary duties (*id.* at 77-80).

HFDF moved to dismiss USFF's counterclaims under Rule 12(b)(6), and USFF moved to transfer the venue of the case to the Western District of North Carolina (Dkts. 18, 24). The Court denied USFF's motion to transfer venue and granted in part and denied in part HFDF's motion to dismiss USFF's counterclaims (Dkt. 37). Specifically, the Court denied HFDF's motion to dismiss USFF's counterclaims for breach of fiduciary duty and breach of contract, denied its motion to dismiss USFF's request for injunctive relief, and granted HFDF's motion to dismiss Yoder's counterclaims for lack of standing (*id.*).

Following the disposition of the parties' motions, the Court issued its first Scheduling Order directing the parties to file any amended pleadings by November 1, 2024 (Dkt. 45). Before that deadline, USFF filed its motion to amend its answer and counterclaims ("Second Amended Answer") (Dkt. 48). USFF's Second Amended Answer seeks to add a new defendant—HFDF's president, Leslie Manookian—and to assert a counterclaim for breach of fiduciary duty against her (*id.* at 2). It also asserts a new counterclaim under the Idaho Consumer Protection Act ("ICPA") against both Manookian and HFDF (*id.*). USFF states its Second Amended Answer "also corrects

**MEMORANDUM DECISION AND ORDER - 3**

and clarifies some responses to allegations which escaped notice in the earlier version," which it

identifies by redlining its current answer and counterclaim (*id.*). HFDF opposes USFF's motion

(Dkt. 52).

Further, the parties also dispute whether a protective order is necessary in this case. During

discovery, USFF sought disclosure of certain donor records (Dkt. 58-1 at 3). These records

included the names and contact information of individuals who donated to the parties' earlier

litigation against COVID-19 vaccine mandates (*id.*). HFDF and USFF "conferred in good faith"

according to HFDF, but they have been unable to agree on the confidential treatment of this donor

information (*id.*). HFDF files a motion for a protective order and includes the following language

in its proposed order:

> Use of any information or documents labeled 'Confidential' and subject to
> this Protective Order, including all information derived therefrom, shall be
> restricted solely to the litigation of this case and shall not be used by any party for
> any other purpose. Confidential information shall not be used to contact any person
> not a party to this litigation.

(Dkt. 58-2). Although the parties initially agreed some protective order is appropriate, USFF now

states it "completely withdraw[s] any agreement that a Protective Order is even required" (Dkt. 60

at 2).

## II.    LEGAL STANDARD

### A.    Motion to Amend Answer

Rule 15 of the Federal Rules of Civil Procedure generally governs the amendment and

supplementation of pleadings. With respect to motions to amend before trial that are not a matter

of course, Rule 15 permits amendment "with the opposing party's written consent or the court's

leave." Fed. R. Civ. P. 15(a)(2). If the opposing party does not consent to an amendment, "[t]he

court should freely give leave when justice so requires." *Id*. This standard favors amendment and should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Five factors guide the Court's analysis of whether a motion for leave to amend is appropriate: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Notably, "[f]utility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). The party opposing an amendment carries the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## B.    Motion for a Protective Order

The party opposing public disclosure of documents produced during discovery has the burden of providing good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011); *see also* Fed. R. Civ. P. 26(c) (explaining good cause exists to avoid annoyance, embarrassment, oppression, undue burden, or expense). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)); *Gonzales v. Battelle Energy All., LLC*, No. 4:20-CV-00102-BLW, 2024 WL 3623511, at *1 (D. Idaho Aug. 1, 2024) (citing *Phillips.*, 307 F.3d at 1210-11).

A court may consider several public-private interests in finding "good cause." *In re Roman Cath. Archbishop of Portland*, 661 F.3d at 424 ("We have directed courts doing this balancing to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)."). These factors include whether disclosure will violate any private interests; whether the information is being sought for a legitimate purpose or an improper purpose; whether disclosure of the information will cause a party embarrassment; whether confidentiality is being sought over information important to public health and safety; whether the sharing of information among litigants will promote fairness and efficiency; whether a party benefiting from the order of confidentiality is a public entity or official; and whether the case involves issues important to the public. *Glenmede Trust Co.*, 56 F.3d at 483. The Court has broad discretion in considering whether these factors met the movant's burden for a protective order. *See Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr.*, LLC, No. 1:19-CV-00009-DCN, 2020 WL 5523384, at *18 (D. Idaho Sept. 14, 2020).

## III.    ANALYSIS

### C.    Defendants' Motion to File an Amended Answer and Counterclaims

USFF moves for leave to file an amended answer and counterclaims, specifically to add Manookian as a counter-defendant for breach of fiduciary duty and to add a new counterclaim under the ICPA against both HFDF and Manookian (Dkt. 48 at 2). USFF also proposes certain amendments to clarify matters which "escaped notice in the earlier version" (*id.*). For the reasons below, the Court denies USFF's motion for leave to amend its answer to assert new counterclaims against Manookian and HFDF but grants USFF leave to make its clarifying amendments.

1.      **USFF's Proposed Breach of Fiduciary Duty Claim Against Manookian**

In opposing USFF's amendment to assert a breach of fiduciary duty claim against Manookian, HFDF argues the amendment would be futile because USFF did not plead a sufficient claim against Manookian nor could they under either Idaho or Wyoming law (Dkt. 52 at 3-4). Specifically, HFDF contends USFF's proposed counterclaim "does not allege that Manookian, in her personal capacity, owed fiduciary duties" to USFF in her individual capacity (*id.* at 3). HFDF argues Manookian's liability to the organization she serves as a director and president "cannot make her personally liable to another organization to which she owes no duties as an individual," so USFF's counterclaim necessarily fails (*id.* at 4). Even assuming USFF's allegations that the funds HFDF holds belong to USFF, HFDF argues that Manookian is not a trustee of those funds under either Wyoming or Idaho, and therefore, she "cannot personally owe fiduciary duties to USFF in relation to those funds" (*id.*).

USFF's proposed amendment does not allege Manookian owed any fiduciary duty to USFF or its members, but instead it alleges that USFF members "relied on [Manookian's] representations that HFDF would process and administer USFF's donations as per Manookian's and other HFDF employees' assurances" and that USFF entered into an agreement with HFDF based on "reliance and trust on HFDF's representations from both Manookian and HFDF employee Sylvie Dore" (Dkt. 48-2 at Ex. A ¶ 27). USFF points to the Court's previous ruling denying HFDF's motion to dismiss a breach of fiduciary duty claim against HFDF (Dkt. 55 at 3) (citing Dkt. 37 at 13). USFF, however, does not explain how this ruling extends to a new theory of liability against an individual defendant.

"To establish a claim for breach of fiduciary duty, [a] plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.*, 92 P.3d 503, 511 (Idaho 2004). For example, a director may owe a fiduciary duty to other directors, the corporation itself, or its shareholders. *Mannos v. Moss*, 155 P.3d 1166, 1172 (Idaho 2007 (citing *McCann v. McCann*, 61 P.3d 585, 590 (2002)). Under Idaho or Wyoming law, a person cannot be deemed a trustee to any property held or administered by the corporation. Wyo. Stat. § 17-19-842(f); Idaho Code § 30-30-618(5).

While USFF's reply brief alludes to an amorphous fiduciary duty owed by Manookian (Dkt. 55 at 3-4), USFF's proposed amendment does not allege Manookian owed a fiduciary duty to USFF or its members. The reply brief contends the proposed counterclaim is "based instead on the personal relationship of trust that USFF developed with Manookian, as an individual—a relationship that led USFF to entrust Manookian and her company with hundreds of thousands of dollars of USFF's donations" (Dkt. 55 at 4). This theory of personal liability, however, fails under both Idaho and Wyoming law because Manookian cannot be a trustee to any property held by the corporation itself. *See* Wyo. Stat. § 17-19-842(f); Idaho Code § 30-30-618(5). Accordingly, the Court denies USFF's motion to amend its answer to allege a counterclaim for breach of fiduciary duty against Manookian.

### 2.    USFF's Proposed ICPA Claim Against Manookian and HFDF

USFF also seeks to add a new counterclaim under the ICPA against Manookian. In support, USFF argues this proposed counterclaim relates back. Specifically, USFF's motion states "[t]he rule for relation back of claims against Manookian to the original filing of the Answer and Counterclaim is satisfied because the allegations against Manookian arise from the same conduct

alleged in earlier documents" (Dkt. 48 at 3). Other than this conclusory argument, USFF provides no explanation for how its proposed ICPA counterclaim against Manookian relates back. On reply, USFF concedes that "some claims against Manookian under the ICPA may have expired" but asserts "that does not render the amended claims futile" (Dkt. 55 at 5). USFF alludes to several theories in support: It argues Idaho courts apply a "continuing tort" theory under the Idaho Tort Claims Act, so some other unspecified statute of limitations may apply here; "USFF need not preemptively plead a defense to the statute of limitations in its amended counterclaim"; "HFDF may raise its statute of limitations defense in due course" (*id.* at 5-6); and other equitable defenses to statute of limitations may apply (*id.* at 7). USFF does not cite any case law or other authorities supporting its theories.

The ICPA aims to "protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection." Idaho Code § 48-601. Further, the ICPA declares unlawful "[e]ngaging in any unconscionable method, act or practice in the conduct of trade or commerce," among several other types of conduct. Idaho Code § 48-603(18) (citing § 48-603C). The statute of limitations for an ICPA claim is two years. Idaho Code § 48-619. Further, where a party is added as a counter-defendant, the amending party must satisfy two additional elements: (1) There was a "mistake concerning the proper party's identity"; and (2) the newly-named party knew or should have known the action should have been brought against her but for that mistake. Fed. R. Civ. P. 15(c)(1)(C)(ii). Also an amendment will not relate back when the proposed amended claim must include additional facts to support the new claim. *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018).

MEMORANDUM DECISION AND ORDER - 9

USFF's theory that it can defer consideration of a statute of limitations defense is misplaced. A motion to amend is "futile" if the amended pleading would "fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6) [motion to dismiss]." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Broemer v. Tenet*, No. CV0104340MMMRZX, 2003 WL 27382056, at *11 (C.D. Cal. Sept. 30, 2003) (comparing a motion to dismiss with a motion to deny an amended complaint for futility). "A statute-of-limitations defense, if 'apparent from the face of the [pleading],' may properly be raised in a motion to dismiss." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 119 (9th Cir.1980)). The same principle extends to a motion to amend where the moving party failed to amend within the appropriate statute of limitations. *Mutakabbir v. Pac. Mar. Ass'n*, 993 F.2d 883 (9th Cir. 1993) (affirming a lower court's denial of a motion to amend a complaint because of failure to comply with the statute of limitations).

USFF's ICPA counterclaim against Manookian was raised more than two years after her alleged conduct. USFF does not contend that Manookian knew or should have known the action would have been brought against her or that its omission of Manookian as counter-defendant was due to mistaken identity. Although USFF lists several theories in support of deferring consideration of the statute of limitations (Dkt. 55 at 5-7), UFSS fails to argue how any particular theory excuses the statute of limitations. Further, the Court disagrees with USFF's assertion that determining whether the statute of limitations bars its proposed counterclaim required the development of the factual record (*id.* at 7). That the statute of limitations bars the claim is readily apparent from USFF's pleadings. *See Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1254. Accordingly,

the Court denies as futile USFF's motion to amend to add a ICPA counterclaim against Manookian.

USFF also proposes an ICPA counterclaim against HFDF. Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment to a pleading may relate back to the date of the original complaint where it asserts a claim or defense that arose out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In other words, the claims must "share a common core of operative facts" such that the amending party will rely on the same evidence to prove each claim. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (quoting *Martell v. Trilogy Ltd*, 872 F.2d 322, 325-26 (9th Cir. 1989)). If the amending party must plead additional facts to support the proposed claim, the amendment will not relate back. *Echlin*, 887 F.3d at 978 (citing *Williams*, 516 3d. at 1133).

Here, USFF's proposed Second Amended Answer adds two pages of text to allege its ICPA counterclaim against HFDF. These allegations include that the two parties engaged in "trade" or "commerce" when they "contracted" to sell administrative services; HFDF engaged in "misleading" and "unconscionable" acts when entering the transaction with USFF; and HFDF engaged in other actions "offensive to the public and in violation of the ICPA" (Dkt. 48 at Ex. A, ¶¶ 107-114). USFF also adds two narrative paragraphs outlining that HFDF allegedly "attempt[ed] to persuade the Idaho Attorney General to make a decision in its favor to be able to retain funds"; Manookian allegedly "disparaged the reputation" of USFF by "spreading rumors and lies about" Yoder; and HFDF engaged in a series of other actions "offensive to the public" in violation of the ICPA (*id.* at ¶¶ 112-113). These facts form the basis of USFF's proposed ICPA counterclaims but did not appear in the narrative of USFF's initial pleading. While USFF contends the allegations in

the Second Amended Answer arose from "the same series of transactions between the parties that were set out in the original counterclaim," they do not address HFDF's objection regarding these new factual allegations.

Accordingly, the Court denies USFF's motion to amend its answer to add a new ICPA counterclaim against HFDF because the amendment would be futile—it does not relate back to USFF's initial pleading, and thus it is time-barred by the ICPA's two-year statute of limitations. For the same reasons the Court discusses in the context of USFF's counterclaim against Manookian under the ICPA, the Court also finds USFF cannot defer any argument that the statute of limitations bars the counterclaim until a later date based on legal theories it has yet to affirmatively argue or support with legal authority. Because a counterclaim under the ICPA against HFDF would be futile, the Court does not address the parties' statutory interpretation arguments regarding the ICPA. *See Johnson*, 356 F.3d at 1077 ("Futility alone can justify the denial of a motion to amend.").[1]

### 3.    Defendants' Miscellaneous Amendments

USFF further seeks to amend its answer to correct and clarify some responses to allegations which escaped notice in the earlier version (Dkt. 48 at 2). USFF suggests several of these changes

---

[1]    The parties disagree as to whether the ICPA applies to non-profits and whether the ICPA applies to HFDF (Dkt. 52 at 6) ("Neither is HFDF operating outside its charitable, non-profit, tax-exempt purposes. Construing the ICPA uniformly with federal law (as Idaho Code requires), HFDF is not subject to or in violation of the ICPA."); (*compare* Dkt. 55 at 7) ("The fact that HFDF is a non-profit does not automatically exempt it from claims under the ICPA."). Because the Court concludes USFF's proposed amendment asserting the ICPA counterclaims are time-barred, it does not reach the merits of the parties' differing interpretations of the ICPA's application to non-profit organizations.

were made to be consistent with the Court's July 2, 2024, order (*id.*). To the extent USFF's proposed clerical amendments are consistent with this order and the Court's July 2024 order, it may file an amended answer and counterclaim no later than fourteen days from the issuance of this Order.

## D.    Plaintiff's Motion for a Protective Order

HFDF moves for a protective order to prevent the disclosure of donor records, including donor names and contact information (Dkt. 58-1). Specifically, HFDF moves for language in the order that "confidential" information "shall be restricted solely to the litigation of this case and shall not be used by any party for any other purpose" and that "confidential information shall not be used to contact any person not a party to this litigation" (*id.* at 3). HFDF contends that a protective order is appropriate because, among other reasons, disclosure of donor names and contact information is "not relevant" or "proportional" to the needs of the case; violates donors' "privacy" and "implicates First Amendment interests"; disclosure risks "donor harassment" and "affect[s] HFDF's ability to raise funds"; and disclosure is not necessary to address USFF's concerns regarding "irregularities" in donations (*id.*).

A court considering a motion for a non-stipulated protective order proceeds in two steps. First, the court must determine whether a "particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211). Among other factors, a court may consider "the risk that disclosure will result in competitive harm." *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Davis v. AT&T Corp.*, 1998 WL 912012, at *2 (W.D.N.Y. 1998)).

MEMORANDUM DECISION AND ORDER - 13

Here, HFDF cites Defendant Yoder's alleged threats to harm HFDF's ability to fundraise, including that he said "if the judge were to give her that money" he is "going to personally make sure that is the most expensive $500K she has ever absconded with . . . no one's going to donate to [HFDF] ever again." (Dkt. 58-1 at 9). According to HFDF, Yoder has reportedly appeared in interviews over a dozen times and asked past donors to file complaints against HFDF (Dkt. 61 at 8). HFDF argues these threats demonstrate its fear of competitive harm is legitimate (*id.*).

Rather than rebut HFDF's fears regarding competitive harm, USFF largely concedes it intends to use the donor list as its own, arguing that HFDF "want[s] to keep the list of donor names and contact information for their own self-serving interests" and that HFDF's "unclean hands cannot be used to deprive USFF of its rightful contact information" (Dkt. 60 at 7). USFF contends it is "not a competitor" to HFDF (*id.*), but as HFDF points out, this assertion is at odds with USFF and Yoder's conduct throughout litigation, including Yoder's statements that "no one's going to donate to [HFDF] ever again" (Dkt. 58-1 at 9). Accordingly, the Court finds HFDF has shown it faces a particularized harm if it were to publicly disclose its donor list: namely, it faces competitive harm to its ability to fundraise.

Because the Court finds particularized harm will result from the public disclosure of information, it "balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211 (citations omitted). Here, however, neither party addresses whether there is any "public interest" in donor information, but instead they chiefly argue over the about private interests. Regarding private interests, HFDF contends it has an interest in protecting the privacy of its donors (Dkt. 58-1 at 7) (citing *Nichols v. Noom Inc.*, No. 20CV3677LGSKHP, 2021 WL 3914078 (S.D.N.Y. Sept. 1, 2021)). According to HFDF, if it were to release donor

information, "donors will have no confidence that their privacy will be honored and protected" (Dkt. 58-1 at 7).

Further, HFDF explains that donors had an opportunity to join USFF's email list when they made their donation to HFDF; USFF has access to this list; and USFF should not have access to the information of donors who already declined to provide it to USFF (*id.* at 9). HFDF argues the "desires of donors who declined to provide contact information to USFF should be respected." (Dkt. 61 at 7). Based on Defendant Yoder's alleged past statements, "HFDF expects more efforts by [USFF] to contact and negatively influence HFDF's donors if [USFF] receives contact information" (Dkt. 58-1 at 7) and that USFF "has already, and will likely continue to, contact non-parties without notice to opposing counsel and without serving a subpoena to obtain information" (*id.* at 8). HFDF cites *X Corp. v. Media Matters for America*, 120 F.4th 190, 198-99 (5th Cir. 2024*)*, to argue this threat of harassment implicates the First Amendment associational rights of HFDF's donors (Dkt. 58-1 at 8).

USFF responds by arguing that it too "desires to protect the privacy of donors" but that HFDF does not "walk its talk" because it is continuing to use the list to solicit donations by using the donor list. Otherwise, USFF does not address HFDF's concerns regarding individual donors who previously chose not to disclose their information to USFF. As HFDF explains, those who donated had the opportunity to join USFF's email list when they donated, and USFF already has this list of donors (*id.* at 9). Based on this record, the Court therefore finds the donors' private interests weigh in favor of protecting the donor list from public disclosure because risk of harassment weighs against public interest in disclosure. Accordingly, the Court grants HFDF's

motion for a protective order and will enter the protective order attached to HFDF's motion (Dkt. 58-2).

## IV.    ORDER

**IT IS ORDERED that:**

1.    Defendant USFF's Motion to File a Second Amended Answer and Amended Counterclaim (Dkt. 48) is **DENIED in part and GRANTED in part**. No later than **fourteen (14) days** from the issuance of this Order, USFF may file its amended answer to address any clerical issues, consistent with the Court's analysis herein and its July 2024 order.

2.    Plaintiff HFDF's Motion for Protective Order (Dkt. 58) is **GRANTED**. Accordingly, the Court adopts the proposed Protective Order attached to HFDF's motion (Dkt. 58-2).

DATED: June 04, 2025

Amanda K. Brailsford
**Amanda K. Brailsford**
U.S. District Court Judge